IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE SHIFFLER,<br>Plaintiff, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> NO. 20-4373 |
| v. | | |
| KILOLO KIJAKAZI[1],<br>Acting Commissioner of Social Security,<br>Defendant. | | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                           November 4, 2022

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Christine Shiffler ("Shiffler") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court are Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 16); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 19); Plaintiff's Reply Brief ("Pl. Reply") (Doc. 22); and the record of the proceedings before the Commissioner (Doc. 11) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the Administrative Law Judge ("ALJ") and contends that an affirmative finding of disability is appropriate. The Commissioner seeks the entry of an order affirming the decision of the ALJ that

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, therefore, she should be substituted for Nancy A. Berryhill as Defendant in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Shiffler did not establish disability. For the reasons set forth below, we deny the request for review and affirm the ALJ's decision.

I.   **FACTUAL AND PROCEDURAL HISTORY**

Shiffler filed her claim for DIB on October 8, 2013, alleging disability arising from a thyroid disorder; spina bifida that caused pain in her back that radiated down one leg; knee and hip pain; and mental impairments, including bipolar disorder and post-traumatic stress disorder. (R. 178, 482.) She had a college education and master's degree, with a work history in several skilled occupations, including as a home therapy teacher, a resource teacher, a director of an educational program, and a writer. She dated the onset of her disability to July 1, 2012, just after she stopped working and the month in which she underwent the first of two surgical procedures for a uterine issue. In September 2013, shortly before she applied for benefits, she also underwent a surgical procedure on her thyroid.

Shiffler's mental health history included an inpatient hospitalization in 2001 and outpatient medication management in 2005. As of her alleged disability onset date of July 1, 2012, Shiffler's bipolar and mental health issues were managed with medication prescribed by her primary care provider, George Weber, D.O. She resumed formal mental health treatment again in June 2013. Shiffler lived with her husband and a young son who had special needs. She testified at her 2020 hearing that she initially stopped working due to thyroid issues and the operations she had concerning her reproductive system. She explained that her changing hormones contributed to manic periods, that she had anxiety about leaving her house, and that she was easily frustrated and had racing thoughts. (R. 489.)

The state agency denied Shiffler's DIB claim on December 4, 2013. (R. 94.) She requested a hearing before an ALJ, which took place on May 21, 2015.[2] The ALJ, James Garrett, left the record open for the submission of further updated medical records by Shiffler's attorney. The ALJ also used that time to engage two medical consultants – a psychologist and a physician who specialized in family medicine – neither of whom personally examined Shiffler but who reviewed the record and rendered opinions in August 2015. The ALJ also propounded interrogatories to an impartial vocational expert ("VE"), given that no VE had been called for the prior hearing. The ALJ then held a supplemental hearing on March 8, 2016 and invited a different VE to respond to questions about Shiffler's past work and other jobs available for hypothetical individuals with various limitations on their functional capacity.

On March 30, 2016, ALJ Garrett issued his written decision that Shiffler was not disabled at any time from her alleged onset date of July 1, 2012 to the date her DIB insured status expired on March 31, 2014.[3] (R. 25-34.) Shiffler requested further administrative review, but the Appeals Council determined that there was no reason to set aside the ALJ's decision, rendering it the final decision of the Commissioner. Shiffler then brought a civil action in this Court, docketed as E.D. Pa. No. 17-cv-3713. The Court agreed with Shiffler that the ALJ improperly relied upon the regulatory provision known as "the grids" to conclude that there were jobs Shiffler could perform and that the ALJ should have utilized VE testimony about the impact of Shiffler's nonexertional

---

[2] This hearing was the first of three hearings Plaintiff ultimately received relative to this benefit application.

[3] DIB claimants bear the burden of proving disability prior to the expiration of their insured status. A claimant who becomes disabled after her date last insured is not entitled to DIB. *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). *See also Matullo v. Bowen*, 926 F.2d 240 (3d Cir. 1990).

limitations on her residual functional capacity. The Court remanded the matter to the Commissioner for further proceedings. (R. 549-66.)

Upon remand, the case was assigned to a different ALJ, Elana Hollo, who convened a telephonic hearing on June 2, 2020. The ALJ took testimony from Shiffler about her condition prior to the expiration of her insured status, as well as her condition at the time of the hearing. She also examined a VE – not one who had been involved in the case earlier – about the jobs that could be performed by various hypothetical individuals. On June 17, 2020, ALJ Hollo issued her unfavorable decision, finding that Shiffler retained the capacity to perform various jobs identified by the VE. (R. 482-96.) Shiffler again requested Appeals Council review, but that body did not set aside the ALJ's decision. (R. 567-72.) This litigation followed, challenging the final decision of the Commissioner as rendered by ALJ Hollo on June 17, 2020.

## II.  STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Shiffler could perform jobs that existed in sufficient numbers in the national economy prior to the expiration of her insured status is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented

by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III. DECISION UNDER REVIEW

The issue before ALJ Hollo at the time of her June 16, 2020 decision was whether Shiffler had been disabled within the meaning of the Act at any time after July 1, 2012, her alleged disability onset date, and before March 31, 2014, her date last insured. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) to reach her conclusion. At Step One, she found that Shiffler had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. (R. 484, Finding No. 2.) At Step Two, she found that Shiffler suffered from severe, medically-determinable impairments, specifically bipolar disorder, post-traumatic stress disorder, anxiety, and hyperthyroidism secondary to thyroidectomy. (R. 484, Finding No. 3.) At Step Three, she concluded that Shiffler did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (R. 486, Finding No. 4.) Plaintiff does not challenge these findings.[4]

The ALJ then considered Shiffler's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ determined:

> **5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequently climb ramps or stairs, frequently climb ladders, ropes or scaffolds,**

---

[4] Plaintiff's brief indicates that she "contests" the conclusion of the ALJ that her severe impairments were only the four impairments listed, but she "chooses to focus [her] brief on the more significant legal errors committed by the ALJ" and does not "offer a separate argument as to the impairments the ALJ erroneously found to be non-severe." (Pl. Br. at 4 n.2.)

5

> **and frequently stoop, crouch, kneel and crawl; only frequent exposure to: extreme heat or cold, wetness or humidity, vibrations, irritants such as fumes, odors, dust and gases, poorly ventilated areas, and exposure to chemicals. Only frequent exposure to driving vehicles, unprotected heights, and moving machinery. Only occasional interaction with supervisors, the general public and with co-workers, and no work involving shared tasks with coworkers. Work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting. Can perform simple, routine tasks at a consistent pace, but not a production rate pace, where each task must be completed within a strict time deadline.**

(R. 488.) In light of the VE's characterization of the requirements of Shiffler's prior employment positions as a teacher of special needs students, resource teacher, director of student affairs, and director of a community organization, the ALJ found at Step Four that these jobs involved non-exertional or mental demands that exceeded Shiffler's RFC. The ALJ thus found that Shiffler was unable to perform her past relevant work. (R. 494-95.)

At Step Five, the ALJ assessed whether Shiffler was capable of performing any other jobs that existed in significant numbers in the national economy considering her age (as a "younger individual" as of the expiration of her insured status), her education, and her RFC. At the hearing, the VE had testified that a hypothetical individual with the capabilities that the ALJ ultimately attributed to Shiffler could perform the functions of several representative unskilled occupations at the light exertional level, such as housekeeper cleaner, sorter, and merchandise marker. (R. 495.) Given this testimony and what became her RFC finding, the ALJ concluded that Shiffler had been capable of making a successful adjustment to other work in the national economy during her alleged disability period and thus was not disabled. (R. 496.)

IV.    DISCUSSION

Shiffler contends that the ALJ's RFC finding — that she can maintain a job at the level of substantial gainful activity — is not supported by substantial evidence and is the product of legal

error. She contends that the ALJ erred in rejecting opinions of a treating source and reviewing medical experts. The Commissioner asserts that the ALJ did not violate the Regulations with respect to how she incorporated opinions of various medical sources and that her decision was supported be the necessary quantum of evidence from the record. We proceed to address these issues in the order in which Plaintiff presents them in her brief.

>  A.  **The ALJ did not fail to explain how she incorporated the opinion of Anthony Galdieri, Ph.D. into her findings.**

Plaintiff first complains that the ALJ disregarded probative findings made by Anthony Galdieri, Ph.D., a reviewing consultant, without explanation. (Pl. Br. at 6.) As Plaintiff recounts, Dr. Galdieri was solicited for an opinion concerning Shiffler in August 2015, when the case was before ALJ Garrett following Shiffler's initial hearing. Dr. Galdieri was provided with the record compiled by the ALJ up to that point and asked to opine about Plaintiff's limitations arising from her mental impairments. (R. 439-47.) He completed a checkbox form entitled, "Medical Source Statement of Ability to do Work-Related Activities (Mental)," and a set of interrogatories in which he was asked to specify Shiffler's impairments; to rate the degree of her functional limitations arising from those impairments; to indicate if her impairments met or medically equaled the criteria for any impairment described in the Listing of Impairments; and to "identify what the claimant can still do in a work setting on a sustained basis despite his/her mental impairment(s)." (R. 447.)

Dr. Galdieri's response noted that Shiffler had a history of "mood swings" along with past inpatient care for suicidal ideation and attempt; that her last inpatient stay was at age 30; and that Exhibits 8F and 14F of the record showed that her anxiety and mood improved with medications and treatment. He commented that recent notes from her treating source reflected GAF scores indicative of only a "moderate degree of impact on global level of functioning," and that a report in the record, which was completed by her husband, showed that she was functional as to her

7

activities of daily living. (R. 444, citing Exhibits 14F and 4E.) He referred to particular exhibits and portions thereof to support his analysis. (R. 443-44.) He identified Shiffler's diagnoses as Affective Disorder and Anxiety Disorder; found that these impairments were severe but not listing-level; and noted that Shiffler was still "able to perform simple routine tasks." (R. 447.) In her decision in 2020, ALJ Hollo gave Dr. Galdieri's opinion "great weight." (R. 493.)

It is undisputed that Dr. Galdieri's responses reflect that he found Shiffler to have severe impairments but that her impairments did not satisfy the Listing requirements. While Plaintiff does not challenge those findings *per se*, she faults the ALJ for failing to incorporate into her RFC finding some of the sub-findings made by Dr. Galdieri in his Step Two and Step Three analysis regarding her mental impairments. Specifically, she argues that by crediting Dr. Galdieri's opinion as a whole, the ALJ should have incorporated into her RFC finding his particular assessment that Shiffler suffered from "moderate to marked" difficulties in maintaining concentration, persistence, or pace. (Pl. Br. at 8.)[5]

As the Commissioner notes, however, the analysis of whether an impairment rises to the level of a Listing is not the same as an RFC assessment. *See* R. 487-88 (explaining same); *Hess v. Commissioner*, 931 F.3d 198, 209 (3d Cir. 2019) (noting that "Paragraph B" criteria of the listings and RFC finding "serve distinct purposes and may be expressed in different ways"). The opinion as to the "moderate to marked" degree of limitation in maintaining concentration,

---

[5] The form Dr. Galdieri was given asked him to characterize the degree of the claimant's functional limitations in several areas using a scale that included "none," "mild," "moderate," "marked," and "extreme." "Extreme" was defined as a degree of limitation that is incompatible with the ability to do any gainful activity. A "marked" limitation was described as one "such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis." (R. 444.) This question on the form followed from the previous question concerning what impairments were medically-determinable (R. 443) and was followed by a question about whether any of Shiffler's impairments met or equaled the listings (R. 445-46).

persistence, or pace was pertinent to the listings of the mental health impairments, which required certain criteria as listed on the form provided to Dr. Galdieri. (R. 444-46.) Rather, the ALJ incorporated into her RFC finding Dr. Galdieri's response to the next question as to Plaintiff's residual capacity: her ability "to perform simple routine tasks" in a work setting on a sustained basis despite her mental impairment. (R. 447.) The ALJ also recounted Dr. Galdieri's findings in a separate form that solicited his assessment of Shiffler's residual ability to do work-related activities, which addressed the degree of restriction in various mental tasks. (R. 439-41.) Inasmuch as the ALJ incorporated Dr. Galdieri's findings about Shiffler's residual capacity, we do not agree with Shiffler that the ALJ was required to further reconcile Dr. Galdieri's findings concerning particular "Paragraph B" criteria of the Listings.

B.   **The ALJ did not err in incorporating the medical opinion of John Menio, M.D.**

Plaintiff next complains about how the ALJ, in making her RFC finding, reconciled the interrogatory responses of Dr. John Menio, another reviewing consultant, as to Shiffler's physical impairments. She contends that the ALJ failed to take into account the entirety of his opinion, which she interprets as reflecting an inability to perform work at a full-time level. She argues that the ALJ, in giving Dr. Menio's opinion "great weight," would be expected to agree with his (alleged) finding that placed her work capacity at a part-time level absent an explanation as to why she rejected that element of his opinion. She contends that the ALJ's failure to provide such an explanation amounts to an error of law. (Pl. Br. at 10.)

Dr. Menio, a specialist in family medicine and a consultant engaged by the Social Security Administration, completed interrogatories in 2015 following Plaintiff's first hearing and prior to her second hearing, both of which were held by ALJ Garrett. Dr. Menio opined that Plaintiff could, without interruption, sit for 3 hours, stand for 3 hours, and walk for 3 hours in an eight-hour workday. As reflected below, he was also asked to indicate the *total* hours per workday that

9

Shiffler could engage in each of those activities, and Plaintiff interprets his response as indicative of an ability to engage in those three activities for a *total* of six hours:

```
                                                              EXHIBIT NO. 18F
                                                              PAGE: 5 OF 9
       MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)
================================================================================
II.  SITTING/STANDING/WALKING

    Please check how many hours the individual can (if less than one hour, how many minutes).

                       At One Time without Interruption
              Minutes                    Hours
    A. Sit    _____    □1  □2  ☒3  □4  □5  □6  □7  □8
    B. Stand  _____    □1  □2  ☒3  □4  □5  □6  □7  □8
    C. Walk   _____    □1  □2  ☒3  □4  □5  □6  □7  □8

                       Total in an 8 hour work day
              Minutes                    Hours
    A  Sit    _____    □1  □2  □3  □4  □5  ☒6  □7  □8    )  our
    B  Stand  _____    □1  □2  □3  □4  □5  ☒6  □7  □8    )  combined
    C. Walk   _____    □1  □2  □3  □4  □5  ☒6  □7  □8    )

    If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual
    performing for the rest of the 8 hours?    N/A
```

(R. 452.)

We note that at the prior hearing, the VE interpreted Dr. Menio's response as a reflection that Shiffler could work only six hours per day, which is less than full-time work. At the subsequent hearing, the VE was not asked to interpret Dr. Menio's opinion nor asked any hypothetical questions based upon an individual limited to 6 hours of work per day. ALJ Hollo, however, found that Shiffler could perform work at the level of substantial gainful activity, which is full-time work, and did not attempt to reconcile the testimony of the VE at the 2020 hearing about capacity for other full-time work and Dr. Menio's apparent opinion limiting Plaintiff to a total of six hours of combined sitting, standing, and walking. Rather, the ALJ simply gave great

weight to the opinion and expressed her belief that she afforded Shiffler "some benefit of the doubt" when, "taking into account that Dr. Menio's lifting and carrying restrictions fall slightly below that required for medium work activity," the ALJ limited Plaintiff to light work. (R. 493.) Plaintiff argues, however, that this does not accomplish the reconciliation of conflicting evidence that is required of the ALJ.

The Commissioner's response is that Plaintiff misinterprets the form that Dr. Menio completed. The Commissioner contends that it is not plausible to read the response as Plaintiff does – that Shiffler could not work a full workday – inasmuch as Dr. Menio answered the subsequent question "N/A" without providing, as the question specifically requested, a description of what "activity" Shiffler would be "performing" for the remainder of an 8-hour workday if the total time for sitting, standing and walking did not equal or exceed 8 hours. (R. 452.) The Commissioner argues that the fact that the prior ALJ engaged with the VE about this interpretation that this was six hours total was "irrelevant" and in no way bound ALJ Hollo to interpret the response in this way. (Def. Br. at 11-12 & n.5.) We are constrained to agree with the Commissioner.

While there may be more than one possible interpretation of Dr. Menio's response, the interpretation that ALJ Hollo made is sufficiently clear and certainly the most plausible reading of the exhibit. The handwritten phrase, which appears to be "any combination," most reasonably reflects that Shiffler could sit for as many as 6 hours, stand for as many as 6 hours, **and** walk for as many as 6 hours, *in whatever order or combination was necessary over an 8-hour workday*, so long as (as Dr. Menio indicated in the prior portion of the response), she engaged in none of those activities for more than 3 hours at a time. We agree with the Commissioner that the fact that the prior ALJ appeared to have interpreted the form one way when he was questioning the VE –

although perhaps not when he wrote his since-vacated decision – has no bearing on the question of a reasonable interpretation of Dr. Menio's opinion. We find no reversible error by ALJ Hollo in this regard.

### C. The ALJ did not err in the weight given to the opinion of Ruth Parzen, LCSW.

Plaintiff's third and final contention is that the rationale provided by the ALJ for assigning "little weight" to an opinion offered by a treating therapist, Ruth Parzen, LCSW, "does not withstand scrutiny." (Pl. Br. at 12.) She contends that the ALJ's conclusions were erroneous or improper in several respects, which we address below.

As ALJ Hollo noted in the decision, Shiffler was not in formal mental health treatment around her alleged onset date of July 2012. Rather, notwithstanding her history of two suicide attempts and an inpatient hospitalization in 2001, she last received outpatient therapy in 2005, and her medications of lithium and xanax were managed by her primary care provider. (R. 490.) She sought treatment at Philmont Guidance Center ("Philmont") in June 2013, approximately 12 months after she stopped working and nine months before her DIB insured status expired. Ms. Parzen was assigned as her therapist, and she came under the care of Joe Schwartz, CRNP, for medication management beginning in August 2013.

When Shiffler's case was before ALJ Garrett, counsel obtained a questionnaire response from Ms. Parzen, which was dated March 1, 2016 and marked as Exhibit 21F. It reflected Ms. Parzen's rating of various mental abilities and aptitudes needed to do unskilled work and reflected Ms. Parzen's estimation of how often Shiffler's impairments or treatments would cause her to miss work. The instructions asked Ms. Parzen to answer the questions with regard to Shiffler's condition and limitations "on and before 3/31/14." (R. 477.) Later, in preparation for the 2020 hearing after the remand, counsel obtained and submitted to the ALJ further medical records from Philmont, as well as a current medical assessment of mental ability to perform work-related

12

activities from the nurse practitioner prescriber at Philmont, Mr. Schatz, which was dated January 9, 2020 and marked Exhibit 24F.[6] The treatment records obtained from Philmont thus consisted of a mental health intake evaluation and treatment plan completed by Ms. Parzen in June 2013, a psychiatric evaluation completed by Mr. Schatz in August 2013, and progress reports completed by Mr. Schatz on a periodic basis thereafter. (*E.g.,* R. 291-306, 376-389.)[7]

The ALJ's decision recounted the content of the intake examinations by Ms. Parzen and Mr. Schatz from June and August 2013 and the latter's progress notes through June 2014, which was shortly after the date last insured. (R. 490-91.)[8] The ALJ then compared Shiffler's statements about the intensity, persistence, and limiting effects of her symptoms with the frequency reported to her medical providers, looking at both her mental health treatment records and records of other providers. (R. 491-92.) The ALJ explained that based upon Shiffler's testimony, her function report, and her reporting to medical providers, any job she performed would involve limitations on her social interaction to accommodate her irritability, constricted affect and rapid speech; that she was limited to simple, routine tasks not involving a production pace to accommodate

---

[6] Given the ALJ's determination that Shiffler had not become disabled prior to the expiration of her insured status in 2014, it ultimately was not necessary for the ALJ to evaluate whether Shiffler became unable to work at a later date or if her disability continued through the date of decision. Accordingly, the opinion of Mr. Schatz from January 2020, which purported to indicate only her current condition, is not the subject of this appeal.

[7] Plaintiff's counsel confirmed in her brief that the clinic did not provide therapy notes and intimated that this was due to a clinic policy. *See* Pl. Br. at 13 (referring to the clinic's "refusal to release her therapy progress note[s]").

[8] ALJ Hollo also recounted what the treatment records showed thereafter, including the fact that Shiffler had a five-day inpatient hospitalization in April 2016 for bipolar disorder, PTSD, and alcohol and cannabis use disorder. (R. 491.) Those developments, however, would have been relevant to the question of whether any disability that was established prior to March 31, 2014 continued to the present and not the prerequisite issue of whether she had, in fact, established disability prior to her date last insured.

drowsiness from medication, fatigue from fluctuating hormones, poor sleep, and depressed motivation; and that she was limited to a low stress job due to her panic/anxiety under stress. (R. 492.) With respect to how she reconciled the opinion evidence with her functional finding, ALJ Hollo offered the following:

> As for the opinion evidence, the record does not contain any opinion evidence dated prior to the claimant's date last insured. Nevertheless, in February 2016, the claimant's counselor, Ruth Parzon,[9] LCSW, completed a medical source statement for the claimant reflecting a range of "limited but satisfactory" abilities to "unable to meet competitive standards" in areas of mental functioning. Ms. Parzon further noted that the claimant would likely be absent from work more than four days per month as a result of her impairments or treatment (Exhibit 21F). The undersigned gives little weight to this opinion. There was no written explanation provided under the check boxes of supported medical or clinical findings. There is no indication within the record of how often the claimant treated with this therapist, or how the claimant present [sic] at therapy from June 2013 to April 2014, but these extreme limitations are wholly inconsistent with the claimant's grossly normal exam with Ms. Parzon at the beginning of her formal mental health treatment (Exhibit 8F p.11). The opinion is also internally inconsistent. The claimant was noted to be able to manage her benefits in her best interest, but was also found to be unable to meet competitive standards of carrying out short and simple instructions or make simple work-related decisions. Neither the limited treatment records received from Ruth Parzon, or the claimant's treatment records with this provider would support these extreme limitation [sic] prior to the date last insured (Exhibit 23F).

(R. 492.)

Plaintiff faults the ALJ for: (1) suggesting that Ms. Parzen did not have a significant history treating her; (2) discrediting the opinion for a lack of supporting explanation or records; (3) comparing the opinion against a single mental status examination rendered by Ms. Parzen in June 2013, while failing to compare it to an initial mental status examination conducted by Mr. Schatz,

---

[9] This was how Shiffler's attorney spelled Ms. Parzen's name when submitting the opinion to the Commissioner for inclusion in the record. Counsel has since clarified that the spelling is "Parzen."

the prescribing provider, in August 2013; and (4) noting internal inconsistency where there was none. (Pl. Br. at 12-16.) The Commissioner defends the ALJ's evaluation of Dr. Parzen's opinion, noting the "numerous legally valid reasons" given for concluding that the opinion merited little weight under the Regulations. The Commissioner contends that Plaintiff's different view of the evidence does not invalidate the ALJ's fact-finding because the ALJ's analysis "enjoys substantial evidentiary support." (Def. Br. at 13.) The Commissioner asserts that the Court should defer to the ALJ's fact-finding because the determination that Shiffler could perform a modified range of light work with postural, environmental, and mental limitations during the relevant period was supported by substantial evidence and was sufficiently articulated.

In her first contention, Plaintiff complains that the ALJ intimated that the opinion was not worthy of weight because Ms. Parzen did not have a significant history treating her. The ALJ accurately noted, however, that the record did not document *how* Shiffler presented to Ms. Parzen apart from the intake evaluation in June 2013, which the ALJ *did* consider and used as a baseline assessment. The necessity or utility of therapy appointments thereafter was not documented in the record before the ALJ, nor was Plaintiff's condition. Ms. Parzen's initial intake evaluation recommended outpatient therapy but left blank a form question seeking the recommended frequency of therapy visits, (R. 304), and no psychotherapy notes were contained in the record. The psychiatric progress notes of Mr. Schatz reflect that Shiffler was meeting with a therapist, but they did not detail or specify the frequency at which those sessions were occurring throughout the period at issue. *Cf.* R. 388 (reflecting Mr. Schatz's recommendation following the December 7, 2013 routine med check that Shiffler meet with her psychotherapist biweekly "at a minimum"); R. 386 (at her subsequent appointment, Mr. Schatz simply recommended that she "continue therapy"). Thus, while Plaintiff seems to think that the ALJ was being uncharitable, given the

absence of a record to show the extent of Ms. Parzen's contact with Shiffler during the nine-month period between when she started treatment and when her insured status expired, and without any documentation that Shiffler presented with such extreme limitations during that time, the ALJ was within her rights to question Ms. Parzen's opinion.

Plaintiff next faults the ALJ for discrediting the opinion due to a lack of supporting explanation or records. Plaintiff suggests that the ALJ unfairly held it against Ms. Parzen that her questionnaire response did not provide a supporting explanation or refer to supporting records. *See* Pl. Br. at 13 ("The form provided to Ms. Parzen did not leave space for her to provide any written explanation, so she cannot be faulted for doing so."). Yet we find this to be a valid criticism of Ms. Parzen's opinion. The form, which was provided to Ms. Parzen *by Shiffler's counsel,* provided a section at the bottom of the first page, to which the bulk of the space was offered to a check-box form, to "explain limitations falling into the three most limited categories … and include the medical/clinical findings that support this assessment." (R. 477.) At the top of the next page, the form asked for a description of "any additional reasons not covered above why [Shiffler] would have difficulty working at a regular job on a sustained basis." Ms. Parzen did not use the space provided in either area to identify any other reasons or otherwise explain her earlier ratings. (R. 478.) She provided no narrative whatsoever but simply checked off boxes and signed and dated the form. The ALJ's criticism was not erroneous or improper.

Plaintiff also faults the ALJ for comparing Ms. Parzen's opinion against a single mental status examination rendered by Ms. Parzen in June 2013, while failing to compare it to the initial mental status examination conducted by Mr. Schatz, the prescribing provider, in August 2013.[10]

---

[10] Ms. Parzen's assessment of Shiffler's mental status when she presented in June 2013, as documented in her records, was largely normal. (R. 303-04.) Two months later, Mr. Schatz identified abnormalities in Shiffler's speech, affect, mood, and thought processes. (R. 298.)

16

Again, we do not find this to be an unfair observation by the ALJ. While Ms. Parzen certainly may have taken into account Shiffler's presentation to Mr. Schatz in August 2013 when she answered the questionnaire in 2016, she failed to indicate in the questionnaire that her responses were based on anything other than her personal experiences with Shiffler. In these circumstances, we do not find it inappropriate for the ALJ to have compared Ms. Parzen's 2016 questionnaire responses, which were to address the period prior to March 31, 2014, with whatever records Ms. Parzen created that pre-dated March 31, 2014. And that was limited to the intake evaluation of June 2013. This criticism does not reflect an error or law or a lack of substantial evidence.

Finally, Plaintiff criticizes the ALJ for an "internal inconsistency" that the ALJ cited: that Ms. Parzen rated Shiffler as unable to meet competitive standards in several work-related aptitudes yet opined that Shiffler would be capable of managing her benefits in her best interest. We do not consider this to be an unfair conclusion by the ALJ. Moreover, it was the last of a litany of justifications provided by the ALJ for giving Ms. Parzen's opinion "little weight." We do not find this argument to undermine the substantial evidence supporting the ALJ's finding in this regard.

The ALJ fairly concluded that neither the limited treatment records received from Ms. Parzen nor the other records from her clinic – e.g., those of N.P. Schatz – "would support these extreme limitation[s]" prior to March 31, 2014. (R. 492.) Even after the initial psychiatric evaluation in August 2013 that reflected more extreme symptoms than those noted by Ms. Parzen just two months earlier, Mr. Schatz adjusted Shiffler's medications such that at the September 28, 2013 follow up appointment, she "was a different person" – her mood had changed from depressed to happy and her mental status examination was normal. (R. 291.) She was still "a lot calmer" at her next visit on December 7, 2013, and the mental status examination was again normal. (R. 388.) At the next visit, just after the expiration of her insured status, Mr. Schatz's notes reflected

that her mood had been stable, and her mental status examination was again normal, although she had been suffering from decreased sleep since a change in her thyroid medication. (R. 386.) Thus, the ALJ's conclusion that Ms. Parzen's assessment of Shiffler's condition prior to March 31, 2014 was not supported by this provider's contemporaneous treatment notes was a valid one, supported by substantial evidence.

## V.     CONCLUSION

We see no basis to reverse this case under sentence four of 42 U.S.C. § 405(g). The ALJ complied with her obligation to evaluate the evidence and explain why she relied upon the evidence she did. She did not violate any regulations regarding the weight given to medical opinions nor the manner in which conflicting evidence is to be reconciled.

The request for review will be denied. An appropriate order will follow.